BRYAN, Judge.
J.F. (“the father”) appeals from a judgment of the Jefferson Family Court (“the trial court”) that found him in contempt for failure to pay child support and ordered him to pay postminority educational support.[1]

Procedural History

The procedural history of this case dates back to October 3, 1989, when the trial court established the paternity of the father and ordered him to pay $170 a month in child support to R.J. (“the mother”) for the benefit of the parties’ child (“the child”), who was on born December 15, 1988. The father’s child-support obligation was increased in October 1998 and again in January 1994. On June 14, 2000, the trial court entered an order finding that the father owed a child-support ar-rearage in the amount of $8,028.[2]
The mother initiated the proceedings that led to this appeal on July 17, 2006, by filing a petition for a rule nisi and a petition to modify the father’s child-support obligation. In her petition, the mother alleged that the father had failed to pay the child-support arrearage that was determined by the June 2000 judgment and that the father had failed to pay an attorney’s fee award in the amount of $1,000 that he had been ordered to pay on April 20, 2000. The mother requested a finding of contempt, a determination as to the father’s obligation to pay a portion of the child’s postminority educational expenses, and an award of her attorney’s fees. The father answered the mother’s petition on August 8, 2006, and denied every allegation in the mother’s petition.
The record contains an order entered on August 27, 2007, that modified the father’s child-support obligation to $314.70_ a month. The record indicates that, after several continuances, the trial court conducted a hearing on December 1, 2008, and that the father was not present for that hearing. On January 12, 2009, the trial court purported to enter a final judgment; however, the judgment failed to rule on the mother’s request to hold the father in contempt, thus rendering the judgment nonfinal. See Faulk v. Berry, 984 So.2d 426, 427 (Ala.Civ.App.2007) (when a purported final judgment did not completely adjudicate the matters in controversy between the parties, including a motion for *722 contempt, the judgment appealed from was nonfirial and the appeal was due to be dismissed).
After the trial court purported to grant the father’s postjudgment motion to set aside the January 2009 judgment, see Hood v. Hood, 23 So.3d 1160, 1162 n. 3 (Ala.Civ.App.2009) (noting that a post-judgment motion may only be taken from a final judgment), the trial court conducted a final hearing on August 11, 2009. The trial court entered a judgment on December 23, 2009, that stated:
“1. The [father] is in contempt of this Court’s order and is in arrears for past due child support the sum of Ten Thousand Eight Hundred Forty Seven Dollars and Sixty-seven Cents ($10,-847.67).
“2. The [father] shall pay to the [mother] the sum of two thousand dollars ($2000) within thirty (30) days; two thousand dollars ($2000) within ninety (90) days; two thousand dollars ($2000) within one, hundred eighty days (180); two thousand.dollars ($2000) within two hundred seventy days (270); and the remainder within three hundred and sixty five (365) days of this Court’s Order.
“3. That the [father] is hereby ordered to pay one-half (½) of all college expenses including books, tuition, room, board and fees. That the [mother] shall submit to the [father] in writing any expenses incurred for said child within thirty (30) days of receipt and [father] will reimburse the [mother] for said expenses within fifteen (15) days thereafter.
“4. That the [father] owes the [mother] the sum of Nineteen Thousand Four Hundred Twenty Seven Dollars and [Fifty]-eight Cents ($19,427.58). This sum represents the [father’s share of one-half (½) of college expenses previously paid by the [mother] through October 2, 2009. That [the father] shall pay said sum to the [mother] within ninety (90) days of this Court’s Order.
“5. The [the m]other and [the fjather shall be equally responsible for any non-covered medical expenses, including but not limited to, all doctor, hospital, prescription drug, dental, orthodontic, oral surgery, optical care, mental care professionals (counselor, psychiatrists), and the like, as well as any amounts that are in excess of said insurance coverage (including deductibles and co-pays) as long as child support or post-minority support is payable. If the [m]other incurs any medical expenses for said child, she will provide the [f]ather with documentation for the medical expenses incurred within sixty (60) days of receipt and he will reimburse the [m]other for said expenses within thirty (30) days thereafter. That the [fjather currently owes to the [m]other the sum of Four Thousand Nine Hundred Eighty Four Dollars and One Cent ($4984.01) and shall pay this amount directly to the [m]other within 30 days of this Court’s Order.
“6. That the [mother’s] Counsel is hereby awarded 'attorney fees in the sum of five thousand dollars ($5000).... Said amount is due within 45 days of this Court’s Order.”
After the father’s postjudgment motion was denied by operation of law, see Rule 1(b), Ala. R. Juv. P., the father filed a timely notice of appeal.

Facts

At the final hearing, the mother submitted a payment summary into evidence that indicated that the father’s child-support arrearage totaled $15,276.81. According to the father, that arrearage amount was incorrect because it did not include the child-support payments he had been making since August 2007. The parties agreed that the father was due a credit in the *723 amount of $4,500 for child-support payments he had made since August 2007.
It was undisputed that the mother’s petition for postminority educational support was filed before the child turned 19. According to the mother, at the time of the August 2009 hearing, the child was attending the University of Alabama at Birmingham (“UAB”) and her grade-point average was 3.52. The record does not clearly indicate the date that the child graduated from high school or the date that she began college, but the mother submitted an exhibit into evidence that summarized the child’s college-tuition and book expenses from fall 2006 through fall 2009 and totaled $19,427.58. The mother did not present any evidence of the child’s room- and-board expenses, other than a $250 expense for a meal plan for the child’s fall 2007 semester of college. The mother stated that the child had qualified for some grants but that the child had also obtained student loans to finance her college education.
The father, who was 64 years old at the time of the final hearing, testified that he was employed in the maintenance department at Lakeland Community Hospital and that he had been working there for nine years. The father testified that he earned approximately $2,648 a month. The father stated that he had a history of health problems and that he paid approximately $8,000 a year in medical expenses not covered by health insurance. The father testified that he did not own his own home but that he was “supposedly” renting a home owned by his sister. However, there is no indication in the record of the father’s housing expenses. The father stated that his regular expenses included a power bill, which was approximately $140 a month; a water bill, which was approximately $28 a .month; $30 a week for gas; and $158 every six months for home insurance. The father testified that, based on his income and expenses, he was unable to assist the child -with her college expenses.
The mother testified that the father had the child removed from his health-insurance plan on December 31, 2007. The mother presented evidence indicating that she had incurred $4,436.50 in health-care expenses for the child from January 2008 through August 2009. The father admitted that, he had removed the child from his health-insurance plan after - the. child turned 19 in December 2007. The father stated that the mother had never notified him .of the. child’s health-care expenses.

Issues

On appeal, the father raises several issues for review by this court, which can be summarized as follows: (1) whether the trial court erred by ordering the father to pay postminority educational expenses that had already been incurred; (2) whether the trial court exceeded its discretion by ordering the father to pay prospective postminority educational expenses for the child;-' (3) whether the trial court erred by ordering the father to reimburse the mother for the child’s health-care expenses; (4) whether the trial court exceeded its discretion by finding the father in contempt and determining the father’s child-support ar-rearage amount; and (5) whether the trial court exceeded its discretion by ordering the father to pay the mother’s attorney’s fees.

Standard of Review

“When a trial court hears ore tenus evidence, its judgment based on facts found from that evidence will not be disturbed on appeal unless the judgment is not supported by the evidence and is plainly and palpably wrong. Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App.1990). Further, matters of child support- are within the sound discretion of the trial court and will not be *724 disturbed absent evidence of an abuse of discretion or evidence that the judgment is plainly and palpably wrong. Id.”
Spencer v. Spencer, 812 So.2d 1284, 1286 (Ala.Civ.App.2001).

Discussion

I. Payment of Retrospective Postminority Educational Expenses
The father argues that the trial court erred by ordering him to reimburse the mother for postminority educational expenses that were incurred by the child from fall 2006 through the child’s 2009 fall semester of college. Specifically, the father argues that the mother’s evidence of the child’s previously incurred educational expenses was hearsay, and that he should not be required to pay those expenses because he had been paying child support at the same time that those expenses were incurred. However, we will not consider these arguments presented by the father because the father has not complied with Rule 28(a)(10), Ala. R.App. P., by failing to include “citations to the cases, statutes, other authorities, and parts of the record relied on.” Rule 28(a)(10). See also State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 822 (Ala.2005) (quoting Ex parte Showers, 812 So.2d 277, 281 (Ala.2001)) (holding that a failure to comply with Rule 28(a)(10) provides an appellate court a basis for disregarding the appellant’s arguments).
The father also argues that the mother failed to produce evidence demonstrating that the child was enrolled in college full-time during the time that the child incurred postminority educational expenses. However, we can find nothing in the record to indicate that the father presented this argument to the trial court; thus, the father has waived appellate review of this argument. Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (citing Rodriguez-Ramos v. J. Thomas Williams, Jr., M.D., P.C., 580 So.2d 1326 (Ala.1991)) (“This Court cannot consider argument raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”). Accordingly, we affirm that part of the trial court’s judgment that ordered the father to pay one-half of the postminority educational expenses that the child had already incurred.
However, the father also argues that the trial court erred by ordering him to pay $19,427.58 as his “share of one-half’ of the previously incurred postminority educational expenses of the child. At the final hearing, the mother testified that the child had incurred $19,427.58 in postminority educational expenses between fall 2006 and fall 2009. The trial court’s judgment ordered the father to pay the full amount of the postminority educational expenses that had been incurred, but it then stated that that “sum represents the [fatherj’s share of one-half (½) of college expenses previously paid by the [mother] through October 2, 2009.” We agree with the father that the trial court erred in concluding that $19,427.58 was one-half of the child’s postminority educational expenses that had already been incurred. Thus we reverse that part of the trial court’s judgment that orders the father to pay the mother $19,427.58, and we remand the cause with instructions to the trial court to amend its judgment to reflect the proper amount of the father’s retrospective post-minority-educational-support obligation, i.e., one-half of $19,427.58, or $9,713.79.
II. -Payment of Prospective Postminority Educational Expenses
Next, the father argues that the trial court erred in ordering him to pay one-half *725 of the child’s prospective postminority educational expenses. The father argues that the judgment is due to be reversed because: (1) the trial court failed to reasonably limit the award of postminority educational support; (2) it imposes an undue financial hardship on him; and. (3) the mother failed to present evidence of the future costs of the child’s college education.
After our supreme court established the existence of postminority educational support in Ex parte Bayliss, 550 So.2d 986 (Ala.1989), this court held:
“A parent has a legal duty to provide or aid in providing a college education for his/her child if the child demonstrates the ability and willingness, to attain a higher education and the parent has sufficient estate, earning capacity, or income to provide financial assistance without undue hardship to himself.”
Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App.1990). Furthermore,
“[t]his court has held that the trial court must set reasonable limitations on the parent’s responsibility for postminority education support, because a failure to do so may impose an undue hardship on the paying parent. See Manring v. Manring, 744 So.2d 919, 922 (Ala.Civ.App.1999); Hocutt v. Hocutt, 591 So.2d 881, 882 (Ala.Civ.App.1991); Kent v. Kent, 587 So.2d 409, 412 (Ala.Civ.App.1991). These limitations include (1) limiting the support to a reasonable period, (2) requiring the child to maintain at least a ‘C’ average, and (3) requiring that the child be enrolled as a full-time student. Manring v. Manring, 744 So.2d 919, 922 (Ala.Civ.App.1999); Ullrich v. Ullrich, 736 So.2d 639, 643 (Ala.Civ.App.1999) (quoting Bahri v. Bahri, 678 So.2d 1179, 1181 (Ala.Civ.App.1996)).
“This court has further held that without legal evidence as to the amounts required for books and tuition or for actual costs of room and board, we cannot determine whether the sums a parent is required to pay for postminority educational support would cause him undue hardship. Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App.1990). Furthermore, when the judgment of the tri,al court has the potential to allow the child to prolong his undergraduate studies well beyond four years, by not requiring the child to take a minimum number of courses each session and by not limiting the number of courses that the child can withdraw from each semester, it will not be upheld. Kent v. Kent, 587 So.2d 409 (Ala.Civ.App.1991); Hill v. Hill, 739 So.2d 501 (Ala.Civ.App.1999) This court has also held that a reasonable limitation would include limiting the expenses to be paid by a parent to particular college or institution. Baggett v. Foster, 622 So.2d 350 (Ala.Civ.App.1992); Eastis v. Bredehoft, 599 So.2d 53 (Ala.Civ.App.1992).”
Penney v. Penney, 785 So.2d 376, 379 (Ala.Civ.App.2000).
Paragraph three of the trial court’s judgment, which orders the father to pay one-half of all the child’s college expenses, including expenses for books, tuition, room, board, and fees, does not contain any reasonable limitations on the award of postminority educational support: the judgment does not limit the support to a reasonable period; the judgment does not require the child to maintain a “C” average; the judgment does not require the child to be enrolled as a full-time student; and the judgment does not limit the expenses to be paid by the father to a particular college or institution. Accordingly, that part of the judgment ordering the father to pay one-half of all the child’s college expenses is due to be reversed. We remand the cause with instructions to *726 the trial court to modify its judgment in accordance with the required limitations set forth above.
In light of the fact that paragraph three of the trial court’s judgment is due to be reversed insofar as it ordered the father to pay one-half of all the child’s college expenses without placing any reasonable limitations on the award, we pretermit discussion of the remaining issues presented by the father on appeal regarding paragraph three of the trial court’s judgment. The trial court, on remand, should consider the father’s claim of undue hardship after crafting the reasonable limitations on the award of postminority educational support.
III. Payment of the Child’s Health-Care Expenses
Next, the father challenges the trial court’s judgment insofar as it ordered him to pay the child’s health-care expenses that were incurred after the child turned 19. The father argues that he was not required to maintain health-insurance coverage for the child after she turned 19 in the absence of an order requiring him to do so. However, there is no indication that the trial court held the father in contempt for failure to maintain health insurance for the child; instead, the trial court’s judgment indicates that the trial court determined that the father was required to contribute to the child’s postminority health-care expenses. The father, in his brief on appeal, has failed to cite a single authority to support his position that he should not be required to contribute to the child’s postminority health-care expenses. See State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d at 822. See also Waddell v. Waddell, 904 So.2d 1275, 1285 (Ala.Civ.App.2004) (“[H]ealth-care expenses may be properly includable in a judgment awarding Bayliss support.”). Accordingly, we affirm that part of the trial court’s judgment that ordered the father to contribute to the child’s postminority healthcare expenses.
However, the father also argues that the amount of health-care expenses he was ordered to pay, $4,984.01, is not supported by the evidence and that the trial court exceeded its discretion in ordering him to pay the full amount of the child’s previously incurred health-care expenses. At the final hearing, the mother presented evidence indicating that she had incurred health-care expenses on behalf of the child in the amount of $4,436.50. The father did not dispute that the child’s health-care expenses totaled. $4,436.50. Our review of the record does not reveal evidence sufficient to support that part of the trial court’s judgment that concluded that the father owed the mother $4,984.01 for health-care expenses.[3]' Furthermore, in light of the fact that the trial court ordered the parties to equally share the cost of the child’s future health-care expenses, we find no evidence to support a determination that the father should bear the entire cost of the child’s previously incurred healthcare expenses. Therefore, we conclude that the trial court exceeded its discretion insofar as it ordered the father to pay all the child’s previously incurred health-care expenses. Accordingly, we reverse that part of the judgment that ordered the father to pay the mother $4,984.01 for the child’s previously incurred health-care expenses and remand the cause with instructions for the trial court to enter a judgment regarding the payment of the child’s health-care expenses that is supported by *727 the evidence presented at the final hearing and consistent with the remainder of the judgment that ordered the parties to equally share the cost of the child’s healthcare expenses.
IV. Finding of Contempt and the. Determination of the Father’s . Child-Support Arrearage
Next, the father argues that the trial court erred in finding him in contempt for failure to pay child support because, he says, the mother failed to present evidence of the correct amount of his arrearage. We note, however, that the father does not argue on appeal that he was current on his child-support payments. The father maintains that there should have been an accounting performed to determine the correct amount of his child-support arrearage. The father cites no authority to support a finding that he should not have been held in contempt, and he cites nothing in the record to demonstrate that the amount of the arrearage he was ordered to pay is incorrect.[4] See Rule 28(a)(10). It is well settled that this court is not required to do a party’s legal research, nor is this court required to search the record to find support for the appellant’s arguments. White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008); and James v. City of Russellville, 57 So.3d 111, 116 (Ala.Civ.App.2010) (“It is not the duty of this court to search an appellate record for evidence to support an appellant’s contention of error.”). Accordingly, the father’s failure to comply with Rule 28(a)(10) has provided this court a basis for disregarding the arguments made by the father on appeal regarding the trial court’s finding of contempt and its determination of the father’s child-support arrearage. See Ex parte Showers, 812 So.2d 277, 281 (Ala.2001) (quoting City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala.1998)).
V. The Award of Attorney’s Fees to the Mother
Finally, the father argues that the trial court exceeded its discretion by ordering him to pay $5,000 toward the mother’s attorney’s fees. The father argues that he does not have the financial ability to comply with the trial court’s order because the attorney-fee award is approximately double the amount of his monthly income andbecause the trial court ordered him to pay the award to the mother’s attorney within 45 days of the entry of the judgment.
Initially, we note that “‘[t]he award of attorney fees is within the sound discretion of the trial court and will not be reversed unless an abuse of discretion is shown.’” B.B. v. F.P., 984 So.2d 418, 423 (Ala.Civ.App.2007) (quoting Volovecky v. Hoffman, 903 So.2d 844, 850 (Ala.Civ.App.2004)). The father testified that he earned approximately $2,650 a month. The only indication of the mother’s income in the record on appeal consists of a CS^ll child-support form filled out by the mother in May 2007 that stated that her gross monthly income at that- time, was $2,708; the mother’s CS-41 form contained a *728 handwritten notation next to the line that listed the mother’s employment income that stated “imputed.” Thus, the record before this court indicates that the monthly incomes attributed to the father and the mother were almost equivalent.
In B.B. v. F.P., supra, a father petitioned the trial court for postminority support on behalf of his son and sought to hold the mother in contempt for failing to pay child support. Id. at 419. In that case, we affirmed an award of attorney’s fees to the father that was more than double the amount of the mother’s monthly income, noting that the father had prevailed in his petition seeking to hold the mother in contempt for failing to pay child support. Id. at 423.
In light of the mother’s successful bid to hold the father in contempt for failing to pay child support in the present case and the nearly identical financial circumstances of the parties, we cannot conclude that the trial court exceeded its discretion by ordering the father to pay $5,000 toward the mother’s attorney’s fees. Furthermore, in light of the fact that the mother’s petition for a rule nisi, which was filed in July 2006, alleged that the father had not paid an award of attorney’s fees that had been entered in April 2000, we cannot conclude that the trial court erred in ordering the father to pay the attorney-fee award within 45 days.[5]

Conclusion

In conclusion, we affirm those parts of the trial court’s judgment that found the father in contempt, that determined his child-support arrearage, and that awarded the mother attorney’s fees. We reverse those parts of the judgment that ordered the father to pay the mother $19,427.58 in postminority educational support, that ordered the father to pay one-half of the child’s prospective postminority educational expenses without any reasonable limitations, and that ordered the father to pay the child’s postminority health-care expenses in the amount of $4,984.01. We remand the cause with instructions to the trial court to enter a judgment consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, J., concur.
THOMAS, J., concurs in the result, without writing.
MOORE, J., concurs in part, concurs in the result in part, and dissents in part, with writing.

. The Jefferson Family Court is a division of the Jefferson Circuit Court. See Act No. 674, Ala. Acts 1967 (renaming the "Juvenile and Domestic Relations Court of Jefferson County” the "Family Court of Jefferson County"). The case was docketed with a "CS” case number, which indicates, that the matter involves a juvenile-court child-support matter. See M.C. v. L.J.H., 868 So.2d 465, 467 (Ala.Civ.App.2003) (citing former Ala.Code 1975, § 26-17-10); and State ex rel. Provitt v. Coleman, 821 So.2d 1015, 1019 (Ala.Civ.App.2001). "For this reason, this proceeding is governed by the Rules of Juvenile Procedure instead of the Rules of Civil Procedure.” M.C. v. L.J.H., 868 So.2d at 467.

. The record indicates that the father appealed that judgment to the Jefferson Circuit Court but that the father voluntarily dismissed his appeal.

. Although paragraph 5 of the trial court’s judgment does not specify what the $4,984.01 award to the mother is in payment of, we presume that it is meant as payment of the child’s health-care expenses because the remainder of paragraph 5 is devoted to ordering the mother and the father to equally share the cost of the child's health-care expenses.

. The father does not argue on appeal that the trial court improperly calculated the arrear-age amount based on the mother’s testimony of the arrearage amount and the patties’ stipulation that the father was due a credit in the amount of $4,5.00. Thus, that issue is waived on appeal. Tucker v. Cullman-Jefferson Counties Gas Dist., 864 So.2d 317, 319 (Ala.2003) (quoting Braxton v. Stewart, 539 So.2d 284, 286 (Ala.Civ.App.1988), citing in turn Ex parte Riley, 464 So.2d 92 (Ala.1985)) ("'An appeals court will consider only those issues properly delineated as such, and no matter will be considered on appeal unless presented and argued in brief.’”).

. However, we note that the father’s inability to pay the attorney-fee award within 45 days may be a defense to a finding of contempt.