PITTMAN, Judge.
Tamila Ann Jacklin (“the mother”) appeals from a judgment of the Madison Circuit Court that, in pertinent part, directed her to pay postminority-educational support pursuant to Ex parte Bayliss, 550 So.2d 986 (Ala.1989), on behalf of two of her three children born of her marriage to Timothy David Austin (“the father”). We affirm in part, reverse in part, and remand with instructions.
The parties’ marriage was dissolved in 1999. During the marriage, three children were born to the parties: a daughter born in 1990, a son born in 1992, and a second daughter born in 1996. Physical custody of all three children was awarded to the father in the divorce judgment, and the mother was directed to pay $350 in monthly child support. In September 2004, a complaint was filed on behalf of the father seeking a finding a contempt against the mother and averring that she had failed to pay $5,191 in child support as previously ordered; the mother counterclaimed for a modification of custody. The trial court entered a judgment in December 2005 terminating the mother’s $350-per-month child-support obligation and directing her to instead pay private-school tuition and fees on behalf of the younger daughter through her completion of the eighth grade and orthodontic expenses on behalf of the son and the younger daughter, but the court did not modify custody.
In April 2009, approximately 11 months after the younger daughter had left private school and enrolled in a public school and approximately 7 months before the older daughter was to reach the age of majority, the father filed a complaint seeking reinstitution of child-support payments and also an award of postminority support *581 as to the older daughter (who was to enter college during the following autumn). The mother again asserted a counterclaim seeking an award of physical custody, as to which claim the father moved for the entry of a partial summary judgment; the mother then amended her counterclaim to seek, in the alternative, increased visitation rights. During the pendency of the action, the parties’ son also enrolled in college, and the father amended his claim to seek postminority support as to the son as well as the older daughter. During the pen-dency of the case, all the sitting circuit judges in the circuit recused themselves, and a circuit judge from an adjacent circuit was appointed to hear the case.
After an ore tenus hearing, during which the father’s motion for a partial summary judgment was denied, the trial court entered a judgment denying the mother’s custody and visitation requests, finding the mother to be voluntarily unemployed, setting the mother’s prospective child-support obligation at $250 per month, and directing her to pay retroactive child support of $5,000. As to the father’s post-minority-support claim, the trial court’s judgment provided that the mother was to pay “post-minority education support in the amount of thirty percent (30%) of tuition, fees, books, room and board expenses” of the two older children of the parties; that obligation was held to be “contingent on the children receiving a complete college degree in four and a half years and further on th[ose] children maintaining at least a ‘C’ overall average.” The mother, following the denial of her post-judgment motion[1] by lapse of time under Rule 59.1, Ala. R. Civ. P., appealed to this court; in her brief, the mother has challenged only that aspect of the judgment directing her to pay 30% of the educational expenses of the two older children.
“The general principles concerning child support are ‘equally applicable to a [proceeding] for post-minority college support.’ Child support is a matter that rests within the sound discretion of the trial court, and its judgment will not be reversed, absent a showing that it abused its discretion. Additionally, where the evidence is presented ore ten-us in a child support case, the trial court’s judgment is presumed correct.”
Wells v. Wells, 648 So.2d 617, 619 (Ala.Civ. App.1994) (citations omitted; quoting Berry v. Berry, 579 So.2d 654, 656 (Aa.Civ. App.1991)).
Citing Thrasher v. Wilburn, 574 So.2d 839, 841 (Aa.Civ.App.1990), in which this court stressed the role of trial courts in determining whether a parent from whom postminority support under Bayliss is sought “has sufficient estate, earning capacity, or income to provide [postminority] financial assistance without undue hardship” (emphasis added), the mother first contends that the postminority-sup-port obligation placed upon her constitutes an undue hardship in light of evidence in the record indicating that she is not currently employed and has title to only one savings account containing $175. Although that evidence might well tend to negate the proposition that the mother has a large estate in her name or a significant current income, we note the trial court’s express determinations regarding earning capacity: that the mother “is not employed,” that she “has shown no justified reason that she is not employed,” and that there was “no objective basis whereby a *582 finding could be made that she is unemployable.” Compare Lynn v. Lynn, 772 So.2d 1189, 1192 (Ala.Civ.App.2000) (which involved an express determination that a parent directed to pay postminority support was not voluntarily underemployed). The record reflects that the mother worked at four different travel agencies and for a major national airline before voluntarily quitting in 2008 and staying home with her son from a subsequent marriage (who is now in elementary school); the mother admitted at trial that, if she were to work each weekday for six hours while that son was in school and were to apply her wages to a postminority-support obligation, that son’s life would not be affected and she “would still have the same amount of money.” The record further indicates that, although the mother has few, if any, assets titled in her name, her current husband has provided an automobile costing $30,000 for her use and that the family enjoys a comfortable lifestyle in a five-bedroom house. Based upon evidence of the mother’s earning capacity, then, we cannot conclude that the trial court erred in determining that the mother could contribute to the collegiate costs of the parties’ two older children without undue hardship. Accord Arnett v. Arnett, 812 So.2d 1246, 1250 (Ala.Civ.App.2001) (“it is within the trial court’s discretion to determine not only [a parent’s] earnings, but also [that parent’s] ability to earn”).
The mother also notes that this court has held that a postminority-support award should have reasonable temporal and academic-progress parameters, a principle that this court appears to have first applied in Kent v. Kent, 587 So.2d 409 (Ala.Civ.App.1991): “[b]ased on the particular facts of [that case],” we directed the trial court in that case to “set a reasonable time limitation on the [parent’s] responsibility for post-minority college support,” including (a) “time limits for the [child’s] ... attainment of a ‘four-year’ college degree,” and further instructed that the support obligation be conditioned (b) “upon the [child’s] maintenance of a ‘C’ average” and (c) “full-time student status while in college.” 587 So.2d at 413. Notwithstanding the reference in Kent to the “particular facts” of that case, subsequent opinions of this court have deemed the inclusion of the three time-limitation and academic-progress provisions identified above to be mandatory when postminority support is awarded. E.g., Lynn, 772 So.2d at 1192 (quoting Bahri v. Bahri, 678 So.2d 1179, 1181 (Ala.Civ.App.1996)), and J.F. v. R.J., 59 So.3d 719, 725 (Ala.Civ.App.2010).
In our view, the trial court’s judgment in this case contains two of the three provisions directed to be included in Kent: the mother’s postminority-support obligation is expressly “contingent on the [older daughter and the son] receiving a complete college degree in four and a half years”[2] and is further conditioned on their “maintaining at least a ‘C’ overall average.” [3] Although the direction that the *583 two older children of the parties must earn a “complete college degree” within four and a half years might be considered the implicit, functional equivalent of a direction that they maintain full-time-student status, we cannot, consistent with Kent ’s progeny and in response to a direct challenge by the mother to the omission of an express full-time-status requirement, ignore the absence of that express condition upon the mother’s postminority-support obligation, especially when the father has not contended that Kent ⅛ progeny were wrongly decided. To the extent that the judgment under review does not contain an express condition that the two older children maintain full-time-student status, it is erroneous.
We last consider the mother’s contention that the judgment should be reversed because the father ostensibly did not prove the costs of the two older children’s college attendance. We disagree. The father testified that both children had enrolled at Auburn University after having taken courses at Calhoun Community College; the father stated that he had paid $3,920.94 for living accommodations for the two older children during the year preceding trial, and he introduced into evidence an exhibit indicating his actual tuition payments on behalf of the parties’ two older children (who intend to continue attending Auburn in the future). Although we have held that the question of undue hardship cannot properly be determined when “no legal evidence [is] presented as to the amount required for books and tuition of for actual costs of room and board,” see Thrasher, 574 So.2d at 841 (emphasis added), we have never held that “legal evidence” of such monetary obligations must be in any particular form, or come from any particular source, in order to support a Bayliss support judgment. In our view, a trial court may, in its discretion, deem a parent’s testimony concerning prior expense payments on behalf of a child related to that child’s obtaining a college education, coupled with documentary evidence of the amount of those prior payments, to be probative of the amount necessary for a child to attend college in the future. See Rules 401 and 402, Ala. R. Evid. We cannot conclude that the trial court acted outside its discretion in directing the mother to pay 30% of “all tuition, fees, books, room and board expenses” of the parties’ two older children.
Based upon the foregoing facts and authorities, we reverse the trial court’s judgment to the extent that it does not expressly condition the mother’s postmi-nority-support obligation upon the two older children’s maintenance of full-time-student status, and we remand the cause for the trial court to amend its judgment to so provide. In all other respects presented for review, the trial court’s judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and THOMAS, J., concur.
BRYAN and MOORE, JJ., concur in the result, without writings.

. Although the mother’s motion cited both Rule 59 and Rule 60, Ala. R. Civ. P., the motion invoked none of the criteria for relief under either subdivision of Rule 60 so as to constitute a bona fide motion under that rule. See generally Curry v. Curry, 962 So.2d 261, 263-64 (Ala.Civ.App.2007).

. The inclusion of a four-and-a-half-year period, as opposed to a four-year period, is not fatal to the judgment. See Thomas v. Campbell, 960 So.2d 694, 700 (Ala.Civ.App.2006) (indicating that five years to complete collegiate studies is a reasonable time limitation).

. The mother contends that the parties' son does not have a “C” average in his collegiate coursework and that he is, therefore, not entitled to postminority support as a matter of law. The mother, in her trial testimony on direct examination, "approximate[d]'' the son’s grade-point average as being 1.3 out of a possible 4, although she was "not sure” of it; the mother’s testimony is not clear as to whether that approximate average is cumulative or a mere semester average. The mother’s prospective postminority-support obligation as to the son is conditioned upon his maintenance of a "C” overall average, and the mother cites no authority preventing the trial *583 court from deeming such a condition to be a sufficient academic-progress requirement to protect against an undue hardship on the part of the mother. Cf. Lindenmuth v. Linden-muth, 66 So.3d 267, 273 (Ala.Civ.App.2010) (”[w]e do not perceive justice in the ... premise that if a child in college has one ‘bad’ semester, all postminority educational support should necessarily end”).